Argued and submitted January 30, reversed and remanded for new trial
October 11, 1989

STATE OF OREGON,
*Respondent,*

*v.*

KRAIG ALAN MARPLE,
*Appellant.*

(87-1128; CA A48864)

780 P2d 772

Ingrid A. MacFarlane, Salem, argued the cause for

appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Laura Anderson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns as error that the court permitted "the prosecution to rely on defendant's exercise of his constitutional right to silence as evidence of his guilt." We interpret the assignment to include his assertions that the court erred when, over his objections, it allowed the state to put on evidence of his statement to the police that, he asserts, invoked his right to remain silent under Article I, section 12, and the Fifth Amendment, to cross-examine defendant on his exercise of that right and to comment on it in its closing argument. We reverse.

A police officer saw two men sitting in a small pickup truck near a tavern. Because the men looked at him suspiciously when he passed, the officer parked his car and watched them from a distance. He saw the passenger, defendant, holding a mirror in his hands, and he saw some powder on the mirror. The officer approached the car, shined his flashlight on defendant and the driver and said, "Police." Defendant put the mirror on the floor between his feet. The officer told the men to keep still and keep their hands in plain sight and called for assistance. After another officer arrived, the first officer asked defendant to step out of the pickup and searched him for contraband. The officer found two paper "bindles" in a package of cigarettes that he found in defendant's coat pocket. One bindle contained a controlled substance. When defendant could not produce identification, the police took him to the sheriff's office, issued a citation to him and released him.

At trial, the state called the first officer as a witness. The prosecutor asked him what had happened after he removed the bindles from defendant's coat pockets. The officer answered, "I asked him, 'Is this yours? What is it?' And he said, 'I'd rather not say.'" Defendant objected *before* the officer had testified that defendant had answered, "I'd rather not say." Out of the presence of the jury, defendant argued that his answer invoked his constitutional right to remain silent and that the state could not bring it to the jury's attention. The court overruled the objection on the ground that defendant had not then exercised his right to remain silent, and he permitted the officer to complete his response and to testify before the jury to defendant's answer.

Subsequently, defendant testified in his own defense that the coat that he was wearing when he was arrested was not his and that he had taken someone else's coat when he left the bar. On cross-examination, the prosecutor asked defendant, "So you never told [the officer] that night that you had on somebody else's coat, did you?" and "[Y]ou never told him that you were the least bit surprised to find out that these drugs were in your pocket because it was somebody else's?" Defendant objected to both questions on the ground that he could not be questioned about his silence, once he had invoked his right to remain silent. The court overruled the objections.

In the state's closing argument, the prosecutor said:

"I don't know about you, but if someone found drugs on me and I didn't know they were there I would be shocked. I would be amazed. I would be blurting out things like where did that come from? It's not mine!"

Defendant again objected. The court stated, "I have ruled. Proceed." In her closing argument, the prosecutor also made several other comments relating to defendant's silence.[1]

■     We first consider the Oregon constitutional question. *State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983). Article I, section 12, does not permit the state in its case-in-chief to draw to the jury's attention a defendant's exercise of his right to remain silent. *See State v. White,* 303 Or 333, 340, 736 P2d 552 (1987). When a prosecutor introduces evidence of a defendant's invocation of the right to remain silent, it is reversible error "if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn

---

[1] Additional comments by the state during its closing argument included:

"His response is not normal, it is not natural, unless he knew full well * * * he was acting like he knew he was caught.

"* * * * *

"If his wallet was really in some other coat in the bar, number one, he would have said it's in another coat in the bar * * * [b]ut he never once said, I have another coat in the bar or there is another coat, this is not mine. Never ever, ever, and that doesn't make sense.

"[W]hen the officer asks him about the cocaine and the bindles in his pocket it's, 'I'd rather not say.'

"Not, hey, I don't know about that stuff, I was just writing a name on a piece of paper and an address. That's not what he said. He didn't want to talk about that * * * because it was his cocaine * * *."

by the jury." *State v. Smallwood,* 277 Or 503, 505, 561 P2d 600 (1977).

The state does not assert that defendant was not prejudiced but, rather, contends that "defendant's answer to [the officer's] * * * question was simply a response to the question asked, not an invocation of the right to remain silent." There is no magic formula that defendant was required to use to assert his right to remain silent under Article I, section 12. By his statement, "I'd rather not say," defendant was saying that he wanted to remain silent in response to the officer's question. In *State v. Green,* 68 Or App 518, 526, 684 P2d 575, *rev den* 297 Or 601 (1984), we held that a defendant invoked his right to remain silent under Article I, section 12, when he refused, before his arrest, to take a field sobriety test, and that the state could not introduce that refusal in evidence. Here, defendant invoked his right to remain silent when he refused to answer the officer's question, and his refusal cannot be used as evidence against him.[2]

The introduction of the evidence is reversible error. There was a "presumably harmful effect" in informing the jury that defendant had exercised his right to remain silent. *See State v. White, supra.* The jury was likely to draw inferences that prejudiced defendant's right to a fair trial. *See State v. Smallwood, supra.*

The state argues that, nonetheless, it could use defendant's statement to impeach his testimony that it was not his

---

[2] At trial, the state argued, in effect, that defendant could not assert his constitutional rights, because he was not in custody. On appeal, however, the state concedes in its brief "that a person who is not in custody *can* invoke the right to remain silent * * *." (Emphasis in original.) In *State v. Mason,* 53 Or App 811, 819, 633 P2d 820 (1981), we said:

"It is clear, however, that a person not in custody may assert his right to remain silent under the Fifth Amendment to the United States Constitution or to his right to counsel under the Sixth Amendment, even though he is not entitled to specific advice as to those rights."

A person not in custody can also assert the right to remain silent under Article I, section 12.

Even though it makes the concession, the state argues that the court did not err, because defendant had not been formally placed under arrest or advised of his *Miranda* rights before he asserted his rights and the officer might have issued a citation in lieu of arrest if defendant had produced valid identification. Whether defendant was in custody when he asserted his rights is not the issue. Neither does it alter defendant's right to remain silent that he was not formally arrested or advised of his *Miranda* rights or that the officer might have issued a citation at the scene. *See State v. Teafatiller,* 64 Or App 612, 615, 669 P2d 379 (1983), *rev den* 296 Or 350 (1984).

coat. In *State v. Pickett,* 37 Or App 239, 243, 586 P2d 824 (1978), on which the state relies, the defendant was stopped and questioned by security guards before the police arrived about why she had left the store without paying for an item that she had taken. She answered that she wanted it for a present for her mother. Subsequently, a police officer arrived and gave her *Miranda* warnings. She told him that she did not have enough money to pay for the item. At trial, she claimed that she had had no intent to steal the sweater and had been suffering from a mental defect. We held that admission of the police officer's testimony did not contravene the defendant's right to remain silent under Article I, section 12, because she had not remained silent. She had answered the question. We also held that, even if she had remained silent about *why* she left the store without paying when the guards questioned her, Article I, section 12, did not prohibit the introduction of their testimony, because the guards were not acting at the direction of the police. Here, however, defendant invoked his right to remain silent in direct response to police interrogation. *Pickett,* therefore, does not support the state's position that it can introduce defendant's statement on cross-examination.

Moreover, we need not decide whether the state would have been able to cross-examine defendant on his invocation of his right to remain silent or whether, in the first place, its questions even referred to that right. The state had already introduced defendant's statement. In so doing, the state may have changed the course of the trial. We will not speculate whether, if the evidence had not been introduced, defendant would still have taken the stand and denied that the coat was his. The prosecutor's comments in her closing argument only added to the prejudice. Indeed, nothing "occurred at trial to obviate the harmful effects" of the court's error. *See State v. White, supra.*[3]

Reversed and remanded for a new trial.

---

[3] Because of our disposition of this case, we do not address defendant's arguments under the Fifth Amendment.